**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RAVICHANDRA TUMU, *Plaintiff* | § § § § | |
| v. | § § | Case No.  SA-26-CV-03834-XR |
| ROYCOIN, STEPHANIE DOE, OWEN DOE, ERIC LIM,  CHAPEL CONSTRUCTION INC,  BINANCE OFF-RAMP DEFENDANT, *Defendants* | § § § § § § | |

**ORDER GRANTING EX PARTE TEMPORARY RESTRAINING ORDER**

On this date, the Court considered Plaintiff Ravichandra Tumu's *ex parte* Motion for a Temporary Restraining Order (ECF No. 2). After careful consideration, the Court issues the following order.

**BACKGROUND**

This Racketeer Influenced and Corrupt Organizations Act ("RICO") action arises out of losses of approximately $621,048 Plaintiff Ravichandra Tumu allegedly suffered as a result of a cryptocurrency scam. The scheme involved several unknown individuals, believed to be foreign citizens, using the aliases "Stephanie Doe", "Owen Doe", and "Eric Lim", the purported "Gordon Rome Law Firm", and the operators of the cryptocurrency platform ROYCOIN and affiliated wallet addresses.

Defendants allegedly engaged in a sophisticated "pig-butchering" cryptocurrency fraud, initially soliciting Plaintiff through online contact and directing him to invest through the ROYCOIN platform.

In January 2025, Plaintiff was allegedly contacted by an individual via direct message on X/Twitter—unidentified in the complaint—who presented himself as an expert in stock options and cryptocurrency investing and advertised novel trading strategies and investment opportunities,

with claims of substantial profits. ECF No. 1 ¶ 35. Plaintiff requested more information regarding these investment methods and was encouraged to engage with an account manager named "Owen." *Id.* Under Owen's direction, Plaintiff was added to a trading group, where purported professional traders discussed market opportunities and shared investment tips to foster a sense of legitimacy and collaboration. *Id.*

Shortly thereafter, Plaintiff was introduced to "Stephanie Doe." *Id.* ¶ 36. Stephanie, acting as the assistant to the initial promoter, provided trading signals to Plaintiff and offered context about the investments discussed in the trading group. *Id.* Both Owen and Stephanie provided detailed instructions for setting up an account on a cryptocurrency trading platform named ROYCOIN, highlighting the platform's purported advanced trading tools and unique opportunities for profit. *Id.* ¶ 37. Plaintiff was encouraged to make small initial investments, which were quickly followed by fabricated trading returns displayed on the platform interface. *Id.* He was allowed to execute a minor withdrawal of approximately $100. *Id.* In the weeks that followed, he transferred approximately $15,000 to his ROYCOIN account to begin more substantial trading activities. *Id.*

After gaining his trust through apparent initial successes and small withdrawals, Defendants escalated their demands. In February 2025, representatives of ROYCOIN extended an offer of a $250,000 trading loan to Plaintiff on the condition that his investment activity would yield sufficient profits to facilitate loan repayment out of accrued gains. *Id.* ¶ 38. This offer was endorsed by Stephanie, who assured Plaintiff of the safety and necessity of this course of action to maximize his returns. *Id.* Plaintiff then committed increasingly significant sums to ROYCOIN, with cumulative deposits eventually totaling $333,637. *Id.*

In May 2025, Plaintiff sought to apply the trading profits to repay the loan advanced by ROYCOIN. *Id.* ¶ 39. However, the platform notified Plaintiff that only full repayment from his

2

personal funds, rather than deductions from his virtual trading balance, would be permitted before any withdrawals could be processed. *Id.* Despite making a series of installment payments to satisfy the margin call and repeatedly paying alleged taxes and associated fees at the platform's insistence, Plaintiff remained unable to access his account balance. *Id.*

In early June 2025, after realizing his assets could not be recovered through ROYCOIN, Plaintiff was approached by an individual named Eric Lim, who identified himself as an attorney affiliated with Gordon Rome Law Firm, a firm purporting to specialize in digital-asset recovery. *Id.* ¶ 41. Lim allegedly represented to Plaintiff that he could track and recover the digital assets lost in the ROYCOIN scam using specialized legal and forensic channels. *Id.* Lim and his associates solicited multiple payments from Mr. Tumu on the pretext of covering legal fees, asset tracing costs, and administrative taxes, with total payments exceeding $250,000.[1] *Id.* Once the payments were made, however, Lim and personnel at Gordon Rome Law Firm terminated all communication with Mr. Tumu and failed to remit any recovered assets, compounding Mr. Tumu's losses and resulting in a second episode of victimization. *Id.*

Blockchain analysis revealed that Mr. Tumu's assets were moved from the initial destination wallets through a series of subsequent transactions to other crypto addresses and wallets, some serviced by unknown exchanges and others controlled by Huione Group and Binance. *Id.* ¶ 45. The tracing analysis showed that the destination wallets provided to Mr. Tumu were not independent investment accounts but were instead aggregation wallets used to receive funds from multiple victims. *Id.* ¶ 46. From these wallets, the cryptocurrency was rapidly

---

[1] It is unclear to the Court whether these funds were transmitted via cryptocurrency or to Defendant Chapel Construction Inc. Plaintiff alleges that "[a]s part of both the primary fraud and the subsequent attempt to recover funds, Mr. Tumu was directed on multiple occasions to transmit substantial sums via wire transfer," ECF No. 1 ¶ 56. including "to Chapel Construction Inc.'s bank account, bypassing cryptocurrency channels," *id.* at 74. It is unclear whether Plaintiff wired these funds to Chapel Construction in connection with the original investment fraud or the recovery fraud because he does not indicate who "directed" him to transfer the funds.

transferred to additional wallets in patterns consistent with laundering and concealment. *Id.* For example, an "Off-Ramp Defendant" allegedly transferred $4,950 of Plaintiff's assets to a Binance wallet. *Id.* ¶¶ 68, 123.

In total, transfers from Mr. Tumu corresponding to losses of approximately $621,048 were tracked flowing from his accounts through several cryptocurrency addresses and wallets through these intermediary wallets and exchanges.

Plaintiff now seeks emergency relief in the form of (1) an *ex parte* temporary restraining order and preliminary injunction to freeze digital assets at associated wallet addresses, (2) expedited discovery to identify those responsible and preserve evidence, and (3) leave for alternative service upon unknown or uncooperative defendants. ECF No. 2.

In support of his motion, Plaintiff proffers the declarations of Evan Cole, who investigated Plaintiff's claims, and Marshal Hoda, Plaintiff's attorney.

The Cole Declaration attests that the facts alleged in the Complaint are consistent with the investigator's professional experience with pig-butchering scams, and provides blockchain-tracing evidence that the victim's assets were transferred to accounts controlled by the Defendants at Huione Group and Binance. *See* ECF No. 2-3, Cole Decl. The Cole Declaration also identifies third parties likely to be in possession of information about the Defendants' true identities and activities, as well as communication channels through which the Defendants may be served.

The Hoda Declaration attests to the reasons why the Court should not require notice before issuance of an *ex parte* temporary restraining order. ECF No. 2-2, Hoda Decl.

**DISCUSSION**

**I.      Temporary Restraining Order**

     **A.      Legal Standard**

Under Federal Rule of Civil Procedure 65, a Court may grant a temporary restraining order *ex parte*. *Ex parte* restraining orders should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. FED. R. CIV. P. 65(b).

The factors that govern an application for a temporary restraining order are the same as those that govern a request for preliminary injunction. *Hill v. Green County School Dist.*, 848 F. Supp. 697, 703 (S.D. Miss. 1994) (citing *Canal Authority of State of Fl. v. Callaway*, 489 F.2d 567 (5th Cir.1974)). Under well-settled Fifth Circuit precedent, a preliminary injunction requires the movant to show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). To determine the likelihood of success on the merits, the Court looks to the standards provided by the substantive law. *See Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir.1985). The substantive prerequisites for obtaining an equitable remedy

as well as the general availability of injunctive relief are not altered by Rule 65 and depend on traditional principles of equity jurisdiction. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999).

Rule 65(c) allows the Court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Included in the Court's discretion when setting a security bond is the ability to "require no security at all." *A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)).

### B.       Analysis

#### 1.       Substantial Likelihood of Success on the Merits

The Supreme Court has held that federal courts do not have authority to freeze a defendant's assets before a judgment is rendered where the plaintiff is seeking damages alone. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund*, Inc., 527 U.S. 308, 322 (1999). Lower courts have interpreted this rule to permit pre-judgment asset freezes where, as here, the plaintiff also seeks equitable relief. *See Astrove v. Doe*, No. 22-CV-80614, 2022 WL 2805345, at *1–2 (S.D. Fla. June 17, 2022) (finding *Grupo Mexicano* permits preliminary injunction freezing assets in crypto fraud case where plaintiff brought claims for conversion, unjust enrichment and sought constructive trust); *cf. Gadasalli v. Bulasa*, No. 4:22-CV-249, 2022 WL 991993, at *3 (E.D. Tex. Apr. 1, 2022) (denying TRO in crypto fraud case where plaintiff sought only monetary damages).

In addition to his causes of action for RICO violations, fraud, conversion, and unjust enrichment, discussed below, Plaintiff has also brought claims for equitable relief, including imposing a constructive trust, disgorgement, and an accounting. *See* ECF No. 1 at 41–43;

6

*Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 878 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment."); *Padua v. Gibson*, 608 S.W.3d 842, 847 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("The law treats a request for disgorgement as an equitable remedy that a court may award after a party proves its entitlement to recover on a claim."); *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied) ("A suit for an accounting is generally founded in equity.").

### (a) RICO

To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962, (2) an injury to business or property, and (3) that such injury was caused by the RICO violation. *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023). To prove a RICO violation, a plaintiff must show that the defendant is (1) a person who engaged in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988).[2]

The Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise, (2) explaining their pattern of wire fraud, and (3) recounting the injuries Plaintiff allegedly suffered as a result of the Defendants' scheme. *See* ECF No. 1 ¶¶ 35–41.

---

[2] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

### (b) Conversion

Conversion in Texas is the "wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Licht v. Ling*, No. 3:23-CV-1018-X, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023) (finding that crypto fraud victim likely to succeed on conversion claim where defendants seized investment and transferred it to wallets under their control). Here, Plaintiff alleges that Defendants seized his assets without any legal basis or his consent and refused to return them. ECF No. 1 ¶¶ 37–41. The Off-Ramp Defendant then allegedly transferred some of Plaintiff's assets to another cryptocurrency wallet, thereby exercising "dominion and control" over those assets. *Id.* ¶¶ 68, 123. These allegations are sufficient to establish a likelihood of success on the merits of Plaintiff's conversion claim.

### (c) Fraud

To prevail on a claim for common-law fraud in Texas, a plaintiff must establish (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009).

Based on the allegations in the complaint, Plaintiff has established a substantial likelihood of success on the merits. Plaintiff has alleged that, when he initially transferred assets to the fraudulent account, he relied on the false representations made by "Owen" and "Stephanie" about the purported investment accounts. ECF No. 1 ¶¶ 35–36. Thereafter, he continued to make deposits because he believed, based on increases in his account balance and his ability to make small

8

withdrawals from the account, that he had invested in in a legitimate cryptocurrency exchange. *Id.* ¶¶ 37–38. Now unable to withdraw any assets from the account or recover the retainer payment he made to Lim and Gordon, Plaintiff alleges that he has been harmed by the loss of assets of over $600,000 as a result of Defendants' misrepresentations. *Id.* ¶¶ 37–41.

### (d) Unjust Enrichment

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, No. 21-CV-00768-XR, 2022 WL 20508282, at *8 (W.D. Tex. Dec. 21, 2022) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Because Plaintiff has detailed how Defendants allegedly obtained a benefit from him by fraud, he has satisfied a likelihood of success on the merits of his unjust enrichment claim sufficient for the purposes of entering a TRO. ECF No. 1 ¶¶ 35–41.

### 2.    Threat of Irreparable Harm

Monetary harm typically is not irreparable harm, because the injury can later be remedied by an award of damages. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) ("[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages."). In cases involving allegedly fraudulent transfers of cryptocurrency, however, courts have found that the risk of anonymous and speedy asset dissipation can establish irreparable harm. *See Jacobo v. Doe*, No. 122CV00672DADBAKBAM, 2022 WL 2052637, at *5 (E.D. Cal. June 7, 2022) (collecting cases); *Gaponyuk v. Alferov*, No. 2:23-cv-01317, 2023 WL 4670043, at *6–7 (E.D. Cal. July 20, 2023) (citing *Jacobo* and finding that the significant risk of defendants transferring assets to unknown locations and the relative anonymity of crypto transactions constituted irreparable harm); *Licht*, 2023 WL 4504585, at *3 (freezing crypto assets and finding irreparable harm where,

"[w]ithout the Court's intervention, Defendants could continue to launder away Licht's money to further thwart traceability and prevent potential recovery, which would inflict irreparable harm.").[3] Under these circumstances, the Court concludes that the speed and anonymity of cryptocurrency transactions constitutes a showing of irreparable harm

### 3.    Balance of the Equities

Third, the balance of equities favors Plaintiff. In *Licht*, the court found that threatened injury to the plaintiff outweighed any damage that an injunction might cause to the owners of the accounts:

> Licht asks the Court to freeze the wallets that his funds have been traced to, which would certainly be disruptive to the owners of the wallets—some of whom may not actually be perpetrators of this particular scheme—and perhaps cause some financial inconvenience. But because all the wallets have at least some of Licht's money in them, and forensic investigation cannot narrow down the ownership any further without alerting the owners and risking further laundering, the potential damage to Defendants pales in comparison to the threat to Licht if the Court denies this relief.

*Licht*, 2023 WL 4504585, at *3. A freeze is even less likely to cause harm to innocent parties here than in *Licht*, where the court was asked to freeze twenty wallets, some perhaps owned by parties "not actually [] perpetrators of this particular scheme." Here, Plaintiff asks the Court to freeze a single wallet that almost certainly belongs to one of the alleged perpetrators. Other courts have reached similar conclusions in balancing the equities of a temporary order freezing cryptocurrency assets. *See, e.g.*, *Jacobo*, 2022 WL 2052637, at *6 ("A delay in defendant's ability to transfer the assets only minimally prejudices defendant, whereas withholding injunctive relief would severely

---

[3] *See also* ECF No. 13-9, *Williams v. Doe*, No. 6:21-cv-03074 at 4 (W.D. Mo. Apr. 5, 2021) (finding irreparable harm in similar case for purposes of TRO where "Plaintiff has established that his rights will be immediately and irreparably harmed absent a [TRO] inasmuch as a Court Order can best secure the funds in question. Without entry of the [TRO], Plaintiff may be unable to recover for his equitable claims."); ECF No. 13-10, *Heissenberg v. Doe*, No. 21-CIV-80716 (S.D. Fla. Apr. 23, 2021) ("Because of the speed and potential anonymity of cryptocurrency transactions, the plaintiff is likely to suffer immediate and irreparable injury if a [TRO] is not granted.").

prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court."); *Gaponyuk*, 2023 WL 4670043, at *4 (finding that a short-term freeze was "unlikely to present any great harms" to the defendants).

The Court further concludes that the burden on third-party Binance required to enforce the asset freeze will be minimal.

### 4.      Public Interest

The Court joins other courts in concluding that freezing accounts allegedly involved in cryptocurrency fraud serves the public interest by preventing criminals from profiting from their conduct, permitting recovery for victims, and deterring future criminal activity. *See Licht*, 2023 WL 4504585, at *3 ("[A]n injunction would serve the public interest because it will dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans like Licht. It will also prohibit Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future."); *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018) (finding that in cryptocurrency fraud case that the public interest was served by "[p]reserving the Court's ability to award full and effective final relief at trial or other disposition of this matter"), *report and recommendation adopted*, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018); *Gaponyuk*, 2023 WL 4670043, at *3 ("[A] temporary asset freeze will serve the public's interest in stopping, investigating and remedying frauds.").

## II.    Expedited Discovery

To identify the Defendants, Plaintiff seeks authorization to serve discovery requests to third parties, including:

- **Binance, Ltd.**, which is expected to possess information about the accountholders of a Binance deposit address to which a portion of Plaintiff's assets were transferred.

- **Gname Pte. Ltd.,** which is the domain registrar for ROYCOIN and the Gordon Rome Law Firm and may possess information about the operators of those domains.

- **Zoho Corporation**, which provided email services to Eric Lim and the Gordon Rome Law Firm, and may possess information about the individuals using these email addresses.

- **Cloudflare, Inc.**, which owns the IP addresses on which the Gordon Rome Law Firm hosted its website, and may possess information about the domain's operators.

- **Wells Fargo**, which will possess information about the owners of an account to which Plaintiff wired $26,500 as payment to the Gordon Rome Law Firm, at Eric Lim's direction;

- **Alphabet, Inc.**, which may possess information about the individuals operating ROYCOIN's YouTube profile.

- **Quora**, a question-and-answer website, which may possess information about the owners of the ROYCOIN account and the accounts of its associated contributors on the site.

ECF No. 2 at 15. The subpoenas will seek:

- Biographical and contact information associated with the Defendants' accounts;

- IP-address and device logs showing the devices and locations from which the Defendants accessed their accounts;

- Payment information, including transaction histories and information about credit or debit cards used to pay for the subpoena targets' services; and

- Account balances and activity.

*Id.* at 15–16.

Finally, Plaintiff requests authorization to serve "follow-on" subpoenas seeking the same information from additional internet-service providers and cryptocurrency exchanges determined

to be in possession of relevant information. *Id.* at 16–17 (citing any party *Licht*, 2023 WL 4504585, at *4 (directing "any party" to produce items requested in the plaintiff's subpoena within 72 hours).

### A.    Legal Standard

Although a party generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," the Court can authorize expedited discovery. FED. R. CIV. P. 26(d)(1). The Federal Rules do not provide a standard for determining whether expedited discovery should be ordered, nor has the Fifth Circuit specifically stated one, but many district courts in the Fifth Circuit use a multi-factor "good cause" standard. *Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017).

"In order to seek a subpoena for identifying information of users, courts have weighed several factors to balance the need for disclosure against First Amendment interests." *Well Go USA, Inc. v. Unknown Participants*, No. 4:12-cv-963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012). "These factors include: (1) a concrete showing of a prima facie claim of actionable harm by the plaintiff; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy." *Id.*

### B.    Analysis

The Court finds that Plaintiff satisfies the good cause standard.

First, consistent with this Court's analysis as to Plaintiff's likelihood of success on the merits, Plaintiff has made a concrete showing of a prima facie claim of actionable harm.

With respect to the second factor, Plaintiff has established that the discovery requests will be narrowly tailored to identifying and locating the unknown Defendants. ECF No. 2 at 15–16. Plaintiff has limited his requests to information about a wallet to which a portion of Plaintiff's

assets were transferred and businesses that have provided web-hosting, email and other services to ROYCOIN, the purported cryptocurrency-investment platform that hosted the other Defendants' alleged fraudulent activities.

Third, because Plaintiff's interactions with Defendants occurred only online, the requested subpoenas are the only plausible methods to uncover their identities and locate Plaintiff's assets. Many courts have authorized expedited discovery from cryptocurrency exchanges and internet-service providers in cryptocurrency-related fraud cases like this one.[4] Indeed, courts have affirmatively held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them.[5]

Fourth, Plaintiff has shown that the identifying information is centrally needed, because he cannot advance his claims for relief without the ability to identify the proper defendant(s) and serve process.

Finally, Plaintiff argues that his interest in the Doe Defendants' identities outweighs their interest in anonymity. The Fifth Circuit has held that there is no expectation of privacy in cryptocurrency exchange records or blockchain transactions. *See United States v. Gratkowski*, 964 F.3d 307, 312 (5th Cir. 2020) (affirming holding that no privacy interest exists in blockchain

---

[4] *See Strivelli v. Doe*, No. 22-2060 (MAS) (RLS), 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (granting expedited discovery in cryptocurrency fraud case and stating that "the Court is unaware of any other way for Strivelli to obtain this information, especially considering the pseudonymity and complexity of cryptocurrency transactions."); *see also Malibu Media, LLC. v. Doe*, No. 15 Civ. 1834(JGK), 2015 WL 4403407, at *2 (S.D.N.Y. July 20, 2015) ("Because the use of BitTorrent is wholly anonymous with the mere exception that the user must reveal the user's IP address, subpoenaing the ISP, which can use its subscriber logs to connect the identity of one subscriber and a particular IP address, is the only means to obtain identifying information under these circumstances.").

[5] *Gaponyuk v. Alferov*, No. 2:23-CV-01317-KJM-JDP, 2023 WL 4670043 (E.D. Cal. July 20, 2023) (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information").

transactions). With respect to privacy interests of the unknown Defendants, courts have found that the need to prosecute fraud outweighs the minimal burden on the privacy interests of unknown defendants, especially where the information sought is limited to account information and not the contents of communications.[6] In short, if anonymity is used to mask fraud, it is unprotected by the First Amendment.[7]

While Plaintiff is granted leave to serve the subpoenas on the third parties, the Court declines to rule on the privacy interests of the Doe Defendants until the third parties have had an opportunity to object to the production of the requested documents.

Courts have recognized that in cryptocurrency fraud cases notification of the wrongdoers would result in a nearly instantaneous dissipation of stolen assets and along with it any chance of recovery. For example, in *Astrove v. Doe*, the court granted a temporary restraining order freezing stolen assets without notice where the plaintiff was induced by an unknown defendant to invest assets with a false cryptocurrency exchange. No. 22-CV-80614-RAR, 2022 WL 2805315, at *3–4 (S.D. Fla. Apr. 22, 2022). Similarly, in *Jacobo v. Doe*, the court granted a temporary restraining order, reasoning that "[t]he cryptocurrency at issue here 'poses a heightened risk of asset dissipation'" and "[i]f defendant were provided notice of this action, 'it would be a simple matter for [him] to transfer [the Tether assets] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this

---

[6] *See, e.g.*, *Muhammed v. Doe*, No. 2:21-cv-12641-GAD-KGA, ECF No. 7 at 3 ("The Court denotes Defendant has a minimal expectation of privacy in his identity and contact information, however this minimal expectation cannot shield him from accountability for fraud and misrepresentation."); *Heissenberg v. Doe*, No. 9:21-CIV-80716, ECF No. 15 at 3 (S.D. Fla. Apr. 22, 2021) (holding privacy interests of John Doe defendant in cryptocurrency theft case were "outweighed by the need to prosecute the theft and conversion alleged in the Complaint.").

[7] *Cf. Malibu Media, LLC v. John Does 1-11*, 2013 WL 3732839, at *6 (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment.")).

15

[c]ourt.'" No. 1:22-cv-00672-DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) (citations omitted).

Here, Plaintiff must first locate his stolen assets to request such a freeze, but his concerns about dissipation are the same. If the Doe Defendants receive notice of the subpoenas, any chance of recovery may be lost. Accordingly, the third parties shall refrain from notifying their customers about the subpoenas until further order of this Court.

Finally, Plaintiff's request to issue follow-on subpoenas is denied without prejudice pending to re-urging at the preliminary injunction hearing. Plaintiff still bears the burden of showing good cause to conduct expedited discovery against the specific third parties at issue. *Accruent*, 2017 WL 8811606, at *1. As one example of the Court's concerns, Plaintiff's discovery motion seeks to justify discovery on Gname Pte. Ltd. and Cloudflare, Inc. based (in part) on their connections to an entity called "Seeds for Wealth," which is not addressed anywhere else in the Plaintiff's submissions. See ECF No. 2 at 15. While the Court is cognizant of the risk of dissipation, it is unclear why Plaintiff could not file motions for leave to serve such follow-on subpoenas under seal to ensure that discovery is only served upon those third parties who are, based on the complaint and supporting declarations, likely to possess information that will enable Plaintiff to identify the real parties in interest.

## III.   Substitute Service

Federal Rule of Civil Procedure 4(f)(3) allows a district court to order service on a foreign defendant by any method reasonably calculated to give notice of the proceedings, provided that the method is not prohibited by international agreement. FED. R. CIV. P. 4(f)(3) (providing that a party "may be served at a place not within [a] judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders"). The Hague Convention on

16

Service Abroad, to which the United States is a signatory, does not apply when the defendant's address is unknown despite diligent investigation. *See Mycoskie, LLC v. 1688best*, No. 18-cv-60925, 2018 WL 4775643, at *1 (S.D. Fla. July 2, 2018) (citing Hague Convention, art. 1).

Thus, where, as here, a foreign defendant's address is unknown, courts simply inquire whether the proposed service method is reasonably calculated to give notice of the proceedings such that it satisfies constitutional due-process requirements.[8] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). In alleged pig-butchering cases like this one, courts applying Rule 4(f)(3) regularly authorize alternative service by email,[9] instant messaging applications such as WhatsApp,[10] transfer of Non-Fungible Tokens ("NFTs") to cryptocurrency addresses controlled by defendants, and publishing case documents online.[11]

Plaintiff seeks to serve (1) ROYCOIN by NFT transfer, (2) Stephanie Doe via WhatsApp, and (3) Eric Lim by SMS, email, and an NFT transfer. *See* ECF No. 2 at 20–21. Because these are the same means that Defendants allegedly used to carry out their alleged scam, the Court is satisfied that they are reasonably calculated to give Defendants notice of the proceedings consistent with the requirements of due process. *Rio Props., Inc.*, 284 F.3d at 1015. Accordingly, the Court

---

[8] Rule 4 does not require a party to attempt service by the methods enumerated in subsections (f)(1) and (f)(2), such as by diplomatic channels and letters rogatory, before petitioning the court for alternative service under subsection 4(f)(3). *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022) (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018)). Nor does it "require exhaustion of all possible methods of service before a court may authorize service by 'other means[.]" *Broan-Nutone LLC v. Conglom Hong Kong Ltd.*, No. 23-CV-393-JPS, 2023 WL 8784668, at *2 (E.D. Wis. Dec. 19, 2023) (quoting *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015)).

[9] *See, e.g.*, *Harris v. Upwintrade.com*, No. 1:24-CV-00313, 2025 WL 1485335, at *2 (E.D. Tex. Jan. 14, 2025).

[10] *See, e.g.*, *Fitzgerald v. Defendant 1*, No. 1:24-CV-21925, 2024 WL 3538245, at *3 (S.D. Fla. June 28, 2024) (authorizing service via Telegram message in pig-butchering case).

[11] *See, e.g.*, *Sun v. Defendant 1*, No. 23-CV-21855-RAR, 2023 WL 4532417, at *2 (S.D. Fla. July 13, 2023) (authorizing service NFT transfer and website posting in pig-butchering case); *Bowen v. Li*, No. 23-CV-20399, 2023 WL 2346292, at *3 (S.D. Fla. Mar. 3, 2023) (same); *Bandyopadhyay v. Defendant 1*, No. 22-CV-22907, 2022 WL 17176849, at *3 (S.D. Fla. Nov. 23, 2022) (same).

will grant Plaintiff's request to effect service of process by the alternative means proposed in the motion.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order, expedited discovery, and substitute service of process (ECF No. 2) is **GRANTED IN PART** and **DENIED IN PART**.

### Temporary Restraining Order

**BINANCE, LTD.** is **ORDERED** to immediately implement a freeze, access denial, or "blacklist," for the following wallet address (the "Receiving Address"), pending further order of the Court: TG1mr4Edvniz7S5jQ6dJ7vfLGg9uqCBovr.

It is further **ORDERED** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the Receiving Address, or any business entity through which they act or which acts in active concert or participation with them; including, but not limited to, those assets currently held at or for the Receiving Address.

This *ex parte* order is issued without notice because the Court has determined, based on Plaintiff's motion and the exhibits thereto, including a declaration by Plaintiff's counsel (ECF No. 2-2), that there is a significant risk that the assets will dissipate and become untraceable before the issuance of an order for injunctive relief if Defendants are given notice. FED. R. CIV. P. 65(b).

Unless extended by the Court, this Order expires on **August 14, 2026**, at **6:00 p.m.**

### Bond To Be Posted

Pursuant to FED. R. CIV. P. 65(c), requiring that security must typically be posted by Plaintiff, the Court has determined that $100 is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained, and therefore, pursuant to FED. R. CIV. P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $100 to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

Upon a showing of good cause by any party-in-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as means of providing a source of funds to which Defendant may be entitled for a wrongful injunction or restraint.

### Substitute Service

**Within three (3) days** after Binance has complied with the Court's order, Plaintiff is **DIRECTED** to serve Defendants with a copy of the summons, the complaint, and this order by the following methods:

- ROYCOIN: NFT transfer

- Stephanie Doe: WhatsApp

- Eric Lim: SMS, email, NFT transfer

### Preliminary Injunction Hearing

Pursuant to FED. R. CIV. P. 65(b), a hearing on Plaintiff's request for preliminary injunction is set for **Thursday, August 13, 2026** at **10:30 a.m.** via Zoom. Defendants may show cause why this Court should not enter a preliminary injunction, extending the terms of this temporary

restraining order and imposing such additional relief as the Court deems just and proper, pending final ruling on the claims asserted against them.

Defendants shall file any response in opposition to the entry of a preliminary injunction no later than five (5) days prior to the hearing for preliminary injunction. If Defendants timely file a response in opposition to a preliminary injunction, Plaintiff may file a reply brief no later than two (2) days prior to the preliminary injunction hearing.

Defendants are warned that failure to timely file an opposition or appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to FED. R. CIV. P. 65.

### Order for Expedited Discovery

Plaintiff is authorized to serve subpoenas on the following third parties: Binance, Ltd., Gname Pte. Ltd., Zoho Corporation, Cloudflare, Inc., Wells Fargo, Alphabet, Inc., and Quora. All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel within seven (7) days of their receipt of Plaintiff's subpoena and this Order.

Plaintiff's request to serve follow-on subpoenas is denied without prejudice to re-urging at the preliminary injunction hearing.

It is so **ORDERED**.

**SIGNED** this 31st day of July, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

20